Our final case this morning is number 19-13674, Southeast Power Group v. Vision 33, Inc. Mr. Feynman. Thank you and good morning, Your Honor. May it please the Court, my name is Peter Feynman and I represent the appellate Southeast Power Group. I begin by first stating the standard of review in this particular appeal is de novo, which is important in this case because it gives this Court the opportunity in reviewing the record with a fresh set of eyes to hold that, in fact, a waiver took place by Vision 33 of the form selection clause in the contract and to send it back instructing the Court without further proceedings to hear this case going forward. The waiver test, as Your Honors know, is two-pronged. Number one, did Vision 33 substantially invoke the judicial process and derogation of the foreign selection clause? And then number two, did by doing that, did that then cause detriment to the appellant in this case? I won't belabor the conduct that is set forth in the brief concerning how Vision 33, in the judicial process of the District Court, but I do want to highlight some conduct that was not necessarily emphasized in the brief. And the first conduct I'd like to highlight is in the filing of the motion to dismiss by Vision 33 on the merits of the case and not raising at that time the form nonconvenience or the form selection clause in the contract. That is particularly important, Your Honors, in this case because in its motion to dismiss, in Roman numeral two at page six of its motion, which is in the appendix, tab 14, it argues that in bold, California's substantive law controls Southeast's breach of the contract action. Now, when you look at the actual contract and the provision that Vision is relying upon to say that California law controls, that's found in paragraph eight of the contract, which is attached to the complaint, and it's paragraph 8.0 under governance, and it's one sentence. And here's what that one sentence says, Your Honors, this agreement shall be governed by and construed in the courts of the laws applicable in the state of California, and contained within the same sentence, and shall be subjected to the exclusive jurisdiction of the courts of the state of California. So in filing its motion to dismiss, obviously Vision 33 looked at that paragraph specifically chose to invoke the first half of the sentence of that paragraph, and obviously specifically chose not to raise the issue of the exclusive jurisdiction of the courts of California, showing, demonstrating to this court, and I think to any court, that it made a conscious decision not to go forward with the form selection clause, and in fact, waiving it. In addition, Your Honor... What do you think Vision 33 was trying to argue? Well, they can't have it both ways, Your Honor. They were arguing that they wanted California law to apply, and within that same sentence, they're asking the court to ignore the form selection clause of California. So I think it's obvious that they're arguing we want California law to apply, but we don't want to be in California. Otherwise, they would have quoted the whole sentence, and not half the sentence. So I think the court can glean from that that there's a choice made by, so it's not just a waiver that said, oh, we'll come back to it later. No, I think the court can conclude that they made a conscious choice not to invoke that at that time, at the very outset of the case, where they're moving to dismiss substantively the action. In addition, Your Honors, in tab 21 of the appellate's appendix, it is the party's joint scheduling conference report and proposed joint scheduling order. And as I looked at that a little more deeply, Your Honor, in preparation for this morning, the second to the last page of that is attachment C. And attachment C is entitled Election to Jurisdiction by a United States magistrate judge for final disposition of motions. And in that attachment C, there is the signature of counsel for Vision 33, again, clearly indicating that they are electing jurisdiction in the court in the Southern District of Florida. Another clear and obvious indication that they were purposely waiving it and willing to go forward substantively in this. Now, of course, the brief is replete with other examples, which I'll only briefly mention, but they're still important nonetheless. The order setting trial actually set by Her Honor, Judge Cook, set a trial date. And this will relate to the prejudice that I'll get to in a minute. If we had been able to go forward, Your Honors, this case would probably be over by now. Trial was set before COVID in February of this year. COVID, as you all know, hit around March. And so we had a trial date. In addition, we labored and actually picked a mediator. We picked a location for the mediation. We picked a time for the mediation and a date for the mediation. All parties agreeing that we would have a mediation on October 2nd, 2019. It wasn't until, Your Honors, that the court, as you know, Suis Ponte decided to invoke this clause that kind of took everybody by surprise. And then Vision 33, at that point, seeing the handwriting on the wall and taking advantage of it, was only after the district court Suis Ponte order did they then file their belated motion to dismiss for form nonconvenience. So I think the first prong of waiver is clearly met here, Your Honors, which then brings us to the second prong under your Davis case. Before you go to that, Mr. Freeman, what is the impact of the fact that the district court Suis Ponte raised the forum selection clause issue? Does that have any impact on your waiver issue? I mean, couldn't the district court raise it that way? No, I don't think the district court can because the parties had indicated to the court, as I mentioned, that they wanted to have this case tried in the Southern District of Florida. When we disclosed our witnesses in the pretrial disclosures, the lion's share of the witnesses were in Miami-Dade County and Broward County because Vision 33 had an office in Broward County, which is, as you know, just north of Miami-Dade County. So there was an intent of being shown to the court. Now, I don't think the court really does have the authority, although we haven't briefed this part, to just take the case from the litigants when it was their choice of forum. All three. In addition... Counsel, two minutes. Two minutes. Thank you. In addition, the lower court thought it was an issue of jurisdiction, not an issue of forum nonconvenience. And so when we had the hearing, we kind of had to explain to the court that this is not jurisdictional. This is a venue situation here. But nonetheless, the court went. And so the prejudice that results then... I take the language from your Davis case, which you did not publish but authored earlier this year in 2020, where you found prejudice to the litigants and held... Rather than pressing the arbitration, in that case it was an arbitration clause, but they're treated the same for the purpose of waiver. Rather than pressing the arbitration provisions from the outset, the sewer company had offered no reason why it was unable to do so from the outset, why they couldn't file it earlier. And the court said, in doing so, the sewer company forced the families to spend resources opposing the original motion and contesting its appeal. And then finally, the court said, instead, the sewer company chose to wait to raise arbitration until litigating in federal court proved unfavorable. I suggest that while it's not completely analogous, the situation is clearly applicable to this case, and the court can find de novo that there has been a waiver and should remand with instructions. Thank you. All right, thank you very much. Okay, Mr. Miller, I think you're on first for Vision 33, and then we'll hear from Mr. Starr. Good morning, Your Honors. May it please the court, my name is Jordan Miller for Applely Vision 33 in this case. Your Honors, I think, first of all, I'll address the waiver argument since that seems to be sort of a general argument. Sort of the threshold issue in this case, and then if I have time, I'll get to some of the enforcement and third-party issues that I'm predicting maybe Mr. Starr will address. But at the outset, we would agree that the waiver analysis is similar to waiver of arbitration cases that this court has considered, and the two elements that the court's considered there under. But there are some important differences, which hopefully I'll get to, especially with respect to the prejudice prong of that analysis. So first, I'll address the substantial invocation of the judicial process. The timeline here, Your Honors, is about five months from when Vision was served with process to when the motion to dismiss the reform nonconvenience was filed. So there's no dispute over what occurred in that five months, but we have to look at what's the significance of the actions that were undertaken in those five months to find if there was a substantial invocation of the judicial process. And the cases make that clear, including the Davis case, that there had to be a substantial activity undertaken by the movement to find that there's been a waiver under the first prong. So first, I'll address the issue that Mr. Fehman brought up, the motion to dismiss. The motion to dismiss that was initially filed in the case was not a motion to dismiss on the merits. It was a motion to dismiss for failure to state a claim, essentially that the breach of contract... That is on... But that is on the merits. If you move to dismiss under 12B6 for failure to state a claim, that is a motion on the merits, because if you win and if the complaint is dismissed with prejudice at some point, that constitutes res judicata. Now, that doesn't mean that you've waived. I'm not suggesting that one way or another. But that is a motion on the merits, is it not? Well, perhaps I misspoke, Your Honour. It was styled as a failure to properly plead, and we did not ask for a dismissal with prejudice. So... And I think that that issue is addressed in the Hampton case out of the Fifth Circuit, which is cited in the briefs, in that a motion to dismiss, for instance, in a contractual claim, stating that... And in this case, we just stated simply that there was not adequate pleading as to what specific parts of the contract were allegedly breached. And I think that that would go to, I believe what was called a perfunctory motion to dismiss in the Hampton case as not necessarily evidencing waiver. So, we never asked for a dismissal with prejudice. And in the White case that's cited in the reply brief, the Davis v White case, there was a motion to dismiss that the court used as part of its analysis to find waiver, but, importantly, the movement in that case, which was an arbitration case, filed an appeal of that dismissal, which, of course, as we all know, is not available because it's not a final decision. And so the court took that into account in its analysis to find waiver, and plus the fact that the motion to compel arbitration was not filed until 18 months after the case started. So, the court looked at a totality of the circumstances, if you will, to find waiver, and I think that that's a theme in most of the cases cited in the brief, is that you have courts finding waiver in these arbitration cases where the case has been going on for a year, where discovery, significant discovery has been undertaken, discovery has closed, there's been a dispositive motion filed on the merits, and in certain circumstances, which I believe in the Hampton case, the movement didn't file the motion to compel until after they lost that dispositive motion, and which we don't have here, and I won't belabor all the other actions that took place, but I believe those are addressed adequately in the brief regarding, for example, the election to the magistrate, the trading of initial disclosures, things like that, which the Woods v. Christensen case in the Southern District laid out are, those are deadlines required by the court upon filing of the case, and, you know, you have to comply with those, and further, in this case, we weren't complaining. Excuse me, Mr. Miller, let me make sure I understand your position. Yes, ma'am. So you're saying that a litigant doesn't waive its right to enforce a forum selection clause unless it files a dispositive motion on the merit? Like, let's suppose you had a case that went on for five years and discovery with experts and depositions. Are you saying that just because no summary judgment motion had been filed at that point that waiver couldn't occur? No, Your Honor, I'm not saying that. I'm just merely pointing out the theme in most of the cases that are cited in the briefs where waiver was found, things like substantial discovery, close of discovery, dispositive motions were present, and the court found there to be waiver based on the totality of those circumstances. Here, there was a motion to dismiss filed, and I went over that. There were initial disclosures traded, election of magistrate, a mediator was selected. The cases cited in the briefs detail as to those things not amounting to waiver on their own. So I believe the court has to take a look at the totality of circumstances. There was discovery propounded, but it wasn't the type of discovery that the Glass, Miller, and Martin case discusses, where there was voluminous paper discovery, numerous depositions, discovery had closed. Here, there were no documents produced. There were no depositions taken, much less even scheduled. So that goes to the second prong of the analysis regarding the prejudice prong. And here, I think even if you did find that there was substantial litigation activity, which I don't think there are compared to the other cases, I think you'll find that there's no prejudice. And that goes to a point that I'd like to make regarding the arbitration cases discussed, where there was waiver found. Of course, in arbitration cases- Mr. Miller, before you get to that point, let me ask you a question, please. If you had lost on your motion to dismiss, if a litigant files a motion to dismiss on the merits under 12B6 for failure to state a claim, loses, can it then file a motion to enforce a forum selection clause and basically have a second bite at the apple? Your Honor, I believe that it could. Here, that wasn't the case. What's a good policy reason for that result, then? Why should, as a matter of, and I know there's a multi-factor test, but I'm asking you this question abstractly. What is the policy reason for not requiring a litigant to take advantage of or invoke a forum selection clause at the earliest opportunity? Well, Your Honor, I believe if- Two minutes, counsel. Counsel, two minutes. If there is a motion to dismiss aimed at the merits, a dismissal with prejudice, then I think that that would cut in favor of finding waiver. But here, it was simply a motion to dismiss for failure to adequately plead the breach of contract case and asking the court to dismiss without prejudice so that they could replead. So I think that you have to look at the totality of circumstances and also go to the prejudice prong of the argument, which here, as I detailed in the brief, there is no prejudice because here, we're not looking between an arbitration forum and a judicial forum. We're looking at two judicial forums. So really, the gravamen of Southeast's complaint that there was prejudice is that they had to compile documents which were never produced in response to our responsive document request to discovery they propounded. Here, if the dismissal is affirmed as to Southeast, the case would have to be refiled in California. And as Southeast stated in their brief, the discovery would essentially just have to be duplicated. They've already compiled documents. Apparently, sorry, my timer's going off. That's okay. They've already compiled documents. Those documents could be produced in California. There would be no waste of resources or cost issues associated with that. So even if you did find that there was substantial litigation activity, which I don't think there was, there was no prejudice because they would essentially be in the same place that they are now in the litigation where there's been no answer filed. The motion to dismiss for failure to adequately plead the breach of contract claim was never ruled upon. So really, nothing has happened in the case. There's been a five-month point between when it was filed and when the motion to dismiss for form nonconvenience was filed. The case gets dismissed. It goes to California. And the parties essentially pick up the case from where it is right now. And there's no evidence in the record. There wasn't any evidence in the record of attorney's fees or litigation costs, which courts in the 11th Circuit or cases in the 11th Circuit have stated is necessary for a showing of prejudice. So one, there's no substantial litigation activity. And two, there's no prejudice shown here, at least substantial prejudice if you find waiver and I believe I'm out of time unless the court has any more questions. All right, thank you very much. Mr. Starr. Good morning. May it please the court. This is Greg Starr on behalf of Appley SAP America. I'm gonna start with just a fundamental point. It's obvious, of course, that if a court finds that Vision 33 waived its venue provision and it formed nonconvenience arguments, everything with respect to SAP is moot. I say that because, of course, SAP is not party to the contract that contains the venue provision. SAP has never sought to invoke that provision. We've never sought to invoke any rights under the Vision 33 contract. And we've never taken the position that we were bound by any term or provision in that contract, including the venue clause. And if a decision had been made in a staged approach here, for example, if the lower court would have held that SAP was somehow bound to that contract and then asked us to weigh in on whether SAP had waived that venue provision, our answer to that question would have been yes. We never sought to invoke it. And so we don't even think there's anything for us to waive. But if we had been initially held to be bound by that, we would not have sought to invoke it because this case did proceed for many months through significant discovery in Florida. And my position for my client is that we were ready to get this result actually on the merits. We had filed a dispositive motion to dismiss, arguing not just that there was a failure to state a claim, but that the claims against my client were barred on their merits by the contract between the plaintiff, Southeast Power, and SAP. So just to summarize that initial point, if the court finds waiver by Vision 33, then there's no issue as to SAP and the case would proceed in full in Florida. We find ourselves though, my client finds itself in what I call a procedural conundrum because if the case is essentially broken apart and Southeast Power is required to sue Vision 33 separately in California, we're left as SAP is left in a bit of a bind. I say that because my client's only connection to this case is that it licensed software, but the case is not really about the software. The case is about the services that Vision 33 provided to the plaintiff. We are, SAP is in a position where we are unable to get complete relief. If this case were to proceed against my client in the Southern District of Florida without Vision 33 as a party, it would be significantly prejudiced. We'd end up with a rule by team issue concerning joinder of parties, if feasible, et cetera. And I think we'd be in a pickle, to say it lightly, where we would be prejudiced as the only defendant and having to defend a case that's really not even about us. Two minutes, counsel, counsel. Sorry. Two minutes, please. Thank you. There's a solution, however, as to SAP. If this court is to find that, in fact, there was no waiver and that the district court's opinion to send the case as to Vision 33 to dismiss that case and potentially require police power to sue Vision 33 in California, I would suggest that this matter, at least as to SAP, still be remanded with instruction for the lower court to stay the action in the Southern District of Florida. That would allow us to continue to litigate a second filed action that was commenced by Southeast Power against my client in Pennsylvania, which is currently in federal court in Philadelphia, being held, being stayed at the moment pending the outcome of this decision. The Eastern District of Pennsylvania is a proper venue and jurisdiction for claims as between Southeast Power and my client. And to the extent that we need, that SAP needs to join Vision 33 to that matter, we can certainly do it because we have a separate contractual provision with Vision 33 that contains the Pennsylvania choice of law and venue provision that allows us to bring our own suit against Vision 33 and join them to the case. And therefore, the Eastern District of Pennsylvania at this point will be able to afford complete relief. With that, I'll thank you. Counsel, you're asking us to, if we remand to also stay the proceeding involving your client, isn't that a matter more properly addressed if we were to remand more properly addressed to the district court? Yes, and alternatively, Your Honor, I have asked that if you remand, then give us or instruct the district court to give us leave to move to stay. And that's totally appropriate, yes. Okay, Mr. Starr, thank you very much. Thank you. Okay, Mr. Feyman, you have your rebuttal time. Thank you, Your Honor. The presence of SAP in this action as a not a party to the forum selection clause now allows this court to go past the two-prong test when it's just a two-party lawsuit in deciding whether there is waiver. And now this court, because of the presence of SAP, can't consider things that were actually brought up by SAP's counsel. And that's the potential of inconsistent results, parallel cases from one coast to the other, judicial economy, and those other public and private concerns. So with SAP now as part of this, this court is not bound by the two-prong test, but can also discuss public policy factors for the things that I just mentioned there. And in fact, counsel is right. There is a real possibility of multiple cases, thousands of miles apart with all the same witnesses. And that certainly factors that this court can and should consider in connection with its determination. Getting back to the prejudice issue, yes, they both filed 12B6 motions, Your Honor, and those go to the merits of the pleading and the case. And I suggest to the court that Vision 33 can't have it both ways. They can't seek to dismiss, go through all of the pretrial discovery, mediation, and then if the motion to dismiss gets denied, they go, oh, well, now we're gonna raise our motion to dismiss based on the form selection clause. That's prejudice, that's bad policy, and that should not be allowed. The bottom line, Your Honors, is that all parties were perfectly willing to proceed in the Southern District of Florida until the court's solis ponte order. And so for the reasons set forth in our briefs and for the reasons that I've stated here this morning, I respectfully request that this court find that a waiver has in fact taken place, that there has been prejudice to my client Southeast Power, and for the reason, the public policy reasons of judicial economy, inconsistent results, parallel cases, for all of the foregoing reasons, this matter should be remanded consistent with that opinion, thank you. All right, thank you, Mr. Fahman, Mr. Miller, and Mr. Starr, we appreciate it. All right, that constitutes the end of our session for today, court is in recess until tomorrow morning at 9 a.m. Have a good morning, bye-bye. Thank you. Thank you, you too.